UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Stephen John Langone,
    Claimant

    v.                           Case No. 14-cv-89-SM
                                       Opinion No. 2015 DNH 019

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g), claimant, Stephen John Langone, moves to reverse or vacate the Acting Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. § 423 (the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.   Procedural History

On May 9, 2011, claimant filed an application for Disability Insurance Benefits, alleging that he had been unable to work since January 15, 2009, due to depression, anxiety, and bipolar

disorder.  That application was denied on August 23, 2011, and claimant requested a hearing before an Administrative Law Judge ("ALJ").

On October 4, 2012, claimant — represented by counsel — his wife, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  On October 19, 2012, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

The Appeals Council denied claimant's request for review, making the ALJ's denial of claimant's applications the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting essentially that the ALJ's decision is not supported by substantial evidence, the ALJ failed to adequately develop the record, and claimant did not receive a full and fair hearing. Claimant then filed a "Motion for Order Reversing the Decision of the Secretary" (document no. 7).  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 9).  Those motions are pending.

II.  <u>Stipulated Facts</u>

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 10), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  <u>"Substantial Evidence" and Deferential Review</u>

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g); <u>see also</u> <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

3

Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966);
see also Richardson v. Perales, 402 U.S. 389, 401 (1971).


      This court's review of the ALJ's decision is, therefore,
both limited and deferential.  The court is not empowered to
consider claimant's application de novo, nor may it undertake an
independent assessment of whether he is disabled under the Act.
Rather, the court's inquiry is "limited to determining whether
the ALJ deployed the proper legal standards and found facts upon
the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31,
35 (1st Cir. 1999).  Provided the ALJ's findings are properly
supported by substantial evidence, the court must sustain those
findings even when there may also be substantial evidence
supporting the contrary position.  See, e.g., Tsarelka v. Sec'y
of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988);
Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222
(1st Cir. 1981).


II.   The Parties' Respective Burdens

      An individual seeking DIB is disabled under the Act if he or
she is unable "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not

4

less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act places
a heavy initial burden on the claimant to establish the existence
of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137,
146-47 (1987); Santiago v. Sec'y of Health & Human Servs., 944
F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant
must prove, by a preponderance of the evidence, that his
impairment prevents him from performing his former type of work.
See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v.
Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the
claimant demonstrates an inability to perform his previous work,
the burden shifts to the Commissioner to show that there are
other jobs in the national economy that he can perform, in light
of his age, education, and prior work experience. See Vazquez v.
Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982);
see also 20 C.F.R. § 404.1512(f).

    In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience. See, e.g., Avery v. Sec'y of Health &
Human Servs., 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v.

Sec'y of Health & Human Servs., 690 F.2d 5, 6 (1st Cir. 1982).
Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).


   With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.


### Background - The ALJ's Findings

   In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory five-
step sequential evaluation process described in 20 C.F.R.
§ 404.1520.  See generally Barnhart v. Thomas, 540 U.S. 20, 24
(2003).  Accordingly, he first determined that claimant had not
been engaged in substantial gainful employment since his alleged
onset of disability: January 15, 2009.  Admin. Rec. at 12.  Next,
he concluded that claimant suffers from several impairments which
are "severe" in that they "impose significant limitations on the

claimant's ability to perform basic work activities." Id.  They
are: "depression and anxiety."  Id.  Nevertheless, the ALJ
determined that those impairments, regardless of whether they
were considered alone or in combination, did not meet or
medically equal one of the impairments listed in Part 404,
Subpart P, Appendix 1.  Admin. Rec. at 17.  Of these findings,
claimant challenges the ALJ's determination that his severe
impairments do not meet or medically equal the severity of one or
more of the listed impairments in Part 404, Subpart P, Appendix
1.

     Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") "to perform a full range of work at
all exertional levels except that he is limited to simple-
unskilled work in a low stress environment (defined as being
limited to no change in the work setting and limited to no need
for the use of judgment), can sustain limited social interaction
with the general public and co-workers and occasional social
interaction with a supervisor and he is able to maintain
attention and concentration for two hour increments throughout an
eight hour work day."[1]  Admin. Rec. at 14.  Based on those

---

[1] "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may

restrictions, and the vocational expert's opinion based on the
hypothetical presented by the ALJ involving a worker with the
above-listed limitations, the ALJ concluded that claimant was not
capable of returning to his prior job.  Id. at 16-17.  However,
based on the vocational expert's testimony, the ALJ concluded
that "[c]onsidering the claimant's age, education, work
experience, and residual functional capacity, there are jobs that
exist in significant numbers in the national economy that the
claimant can perform," such as a laundry sorter, a housekeeper or
cleaner, or a garment folder.  Id. at 17-18.  Consequently, the
ALJ concluded that claimant was not "disabled," as that term is
defined in the Act, through the date of his decision.  Id. at 18.

## Discussion

Claimant challenges the following aspects of the ALJ's
decision: (1) his decision that claimant's impairments,
separately or together, did not meet or medically equal any of
the listed impairments is not supported by substantial evidence;
(2) his RFC determination; (3) his determination that there are

---

affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

jobs existing in significant numbers in the national economy that claimant could perform; (4) his failure to properly develop the administrative record in this case; and (5) his failure to give claimant a full and fair hearing due to his alleged bias against the testimony of claimant's spouse.

I.   <u>Step Three - Listing Level of Impairment(s)</u>

At step three of the sequential analysis, claimant bears the burden of demonstrating that he suffers from an impairment or combination of impairments that meets or equals a listing in the pertinent regulations.  <u>See</u> <u>Torres v. Sec'y of Health & Human Servs.</u>, 870 F.2d 742, 745 (1st Cir. 1989) (citing <u>Dudley v. Sec'y of Health & Human Servs.</u>, 816 F.2d 792, 793 (1st Cir. 1987)). While claimant identifies his impairments - Panic Disorder with Agoraphobia, Social Anxiety Disorder, and Severe Major Depressive Disorder with Psychotic Features - he has not shown how they (together or in combination with his other impairments) amount to a listing level impairment.  <u>See</u> Claimant's memorandum (document no. 7-1) at 9-16.  Rather, claimant asks this court to reconsider the medical evidence and the testimony presented at his hearing de novo.  As explained above, that type of review is not available in this court.  <u>See</u> <u>supra</u> at 3-4.

In his decision, the ALJ specifically (and thoroughly) addressed each of claimant's impairments and concluded that they did not meet a listing level - either standing alone or in combination.  Admin. Rec. at 12-16.  The court can discern no error in the ALJ's findings, which are supported by substantial evidence in the record.

II.  <u>Claimant's Residual Functional Capacity</u>

Claimant also challenges the ALJ's determination that he:

> has the residual functional capacity to perform a full range of work at all exertional levels except that he is limited to simple-unskilled work in a low stress environment (defined as being limited to no change in the work setting and limited to no need for the use of judgment), can sustain limited social interaction with the general public and co-workers and occasional social interaction with a supervisor and he is able to maintain attention and concentration for two hour increments throughout an eight hour work day.

Admin. Rec. at 14.

Specifically, claimant contends that the ALJ's finding that claimant could maintain attention and concentration for two hours is not supported by substantial evidence and that the ALJ failed to consider evidence of certain limitations that claimant alleges further restrict his functional capacity — such as his alleged delusions of persecution, moderate or marked difficulty in maintaining concentration, and side effects of his medication.

10

It is claimant's burden to show that the limitations he claims
ought to factor into a RFC determination.  See Boston v. Astrue,
No. 10-cv-250, 2011 U.S. Dist. LEXIS 66777, at *28 n.19 (D.N.H.
June 22, 2011).

There is, to be sure, evidence in the record supportive of
claimant's assertion that he is disabled and unable to maintain
concentration for two hours at a time.  As he points out, his
testimony and that of his wife indicate that he plays bingo
online for only 15-20 minutes at a time and that "he can't do
anything for any length of time."  Admin. Rec. at 32, 41.

However, there is also substantial evidence in the record to
support the ALJ's residual functional capacity determination,
including that claimant is capable of maintaining attention and
concentration for two hour increments through an eight hour work
day.  The report of agency psychological consultant, Dr. Laura
Landerman, Ph.D., suggests that claimant is "able to sustain
concentration and attention for two hour periods for simple
tasks."  Admin. Rec. at 54.  Dr. Landerman's report provides that
it is based on medical and other evidence received from
consulting agency examining psychologist, Dr. Juliana Read,
Ph.D., claimant's treating doctor, Dr. Jayakumar Patil, M.D.,

treating physicians at Bedford Internal Medicine, claimant, and claimant's wife.  Id. at 50-51, 54.

The ALJ was entitled to rely on Dr. Landerman's report, as it was clear that she had reviewed the medical evidence of record.  "[A]s a general matter, an ALJ may place '[g]reater reliance' on the assessment of a non-examining physician where the physician 'reviewed the reports of examining and treating doctors . . . and supported [his] conclusions with reference to medical findings.'"  Ferland v. Astrue, No. 11-123, 2011 U.S. Dist. LEXIS 126188, at *10-*11 (D.N.H. Oct. 31, 2011) (quoting Quintana v. Comm'r of Social Security, 110 Fed. Appx. 142, at *1 (1st Cir. 2004)); see also 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.").[2]  Thus, the ALJ's finding that claimant could

_____

[2] As the Commissioner conceded, although not raised by claimant, the ALJ erred in affording controlling weight to Dr. Landerman's opinion.  See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2 (July 2, 1996) ("[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'") However, the ALJ's error was harmless because it is clear from his decision that he considered all the record evidence, and while he may have afforded greater weight to Dr. Landerman's opinion than Dr. Read's, for example, whose opinion the ALJ gave "great weight," the ALJ is entitled to afford a non-treating source's opinion greater weight than that of a treating source "in appropriate circumstances."  Id.

maintain attention and concentration for two hour increments in an eight hour work day is supported by substantial evidence.

Further, it is clear from the ALJ's decision that he weighed the medical evidence, including Dr. Lederman's report, Dr. Patil's treating notes, and Dr. Read's examination report, along with the subjective reports by claimant and his wife, and that his conclusion regarding claimant's residual functional capacity is supported by substantial evidence.  Admin Rec. at 14-16.

While claimant contends that the ALJ selectively discounted portions of especially Dr. Read's report, including that he "may suffer interference associated with his delusions of persecution," the ALJ properly discounted that opinion based on Dr. Lederman's report and Dr. Patil's treating notes, which provided that claimant's mood was stable, that he was feeling much better, and that his most significant source of stress was his inability to find a job.  Admin. Rec. at 206-12.  Further, an ALJ is free to reject medical source statements conditioned with language like "may" based on independent findings such as Dr. Patil's notes and Dr. Lederman's interpretation of the medical evidence.  See Estey v. Colvin, No. 13-45, 2014 WL 1513341, at *5 (D. Me. Apr. 16, 2014).  Further, the mental status exam administered by Dr. Read on which claimant scored 29 (out of a

13

possible 30) and showed normal behavior, challenged by claimant
in this proceeding, is specifically contemplated by the
applicable regulations for assessing concentration, persistence,
and pace.  See 20 C.F.R. Pt. 404, Sbpt. P, App'x 1 § 12.00(C)(3).

    With respect to claimant's allegation that the ALJ did not
afford sufficient weight to his complaints that the side effects
of his medication contributed to his diminished functional
capacity and his other self-reported complaints, the ALJ
concluded, as he is entitled to do, that claimant's reports and
those of his wife were not wholly supported by the medical and
other objective evidence in the record.  Admin. Rec. at 14.  The
ALJ explained that the objective medical evidence, such as Dr.
Patil's treating notes, did not support claimant's current
complaints regarding the side effects of his medication, and that
claimant's admitted daily activities were not consistent with his
subjective complaints.  See Admin. Rec. at 15-16.  The ALJ's
credibility finding is supported by substantial evidence and
consistent with the applicable regulations and the Commissioner's
interpretations of the same.  See 20 C.F.R. § 404.1529; SSR 96-
7p, 1996 WL 374186, at *5-*6 (July 2, 1996).

14

III.   <u>Step 5 — the Hypothetical and Jobs in the National Economy</u>

Claimant also challenges the hypothetical question the ALJ posed to the vocational expert ("VE").  Specifically, he asserts that if the ALJ had included all of the exertional and non-exertional limitations identified by some of the consulting physicians and his and his wife's testimony, he would have been found disabled.  He further asserts that it was error for the ALJ to reject the response from the ALJ to a second, more limiting hypothetical that the ALJ proposed to the VE at claimant's hearing.

But, it is quintessentially the role of the ALJ to review the record evidence, ascribe to each piece of evidence appropriate weight, and render his decision.  Here, as discussed above, the ALJ adequately (and supportably) explained his decision to credit some of the record evidence and discount other evidence in determining claimant's RFC.  Thus, because the ALJ did not err in his RFC determination, the ALJ was not required to accept the VE's testimony that claimant would not be able to perform any jobs in the national economy if he were off task approximately 20 percent of the day and would be absent three or more times per month, because the ALJ determined that those limitations did not apply to claimant.  See <u>Phelps v. Astrue</u>, No.

15

10-cv-240, 2011 U.S. Dist. LEXIS at *28-*29 (D.N.H. July 7, 2011).

As is often the situation in disability cases, here there is substantial evidence to support claimant's position that the additional limitations should have been included in the ALJ's hypothetical to the VE.  But, importantly, there is also substantial evidence to support the ALJ's decision to the contrary.

IV.  <u>Development of the Administrative Record</u>

Claimant contends that the ALJ failed to adequately develop the Administrative Record in that he failed to request that claimant's treating physician perform a consulting examination and that the ALJ failed to fully develop the record to include objective clinical findings pertaining to claimant's alleged disabling conditions.  Claimant's contentions fail, as the record in this case is sufficiently developed.

First, the Commissioner requested information from claimant's treating physician on June 2, 2011, and again on June 16, 2011.  Admin. Rec. at 213.  On July 9, 2011, Dr. Patil responded with medical records pertaining to claimant.  <u>Id.</u> at 214, 206-12.  Second, on May 31, 2012, after Dr. Patil's notes

16

and Dr. Lederman's report were in the record, but before
claimant's hearing, the Commissioner specifically informed
claimant's attorney that it is his "responsibility to provide
medical evidence showing that [claimant] has an impairment(s) and
how severe it is." Id. at 186.  The letter to claimant's
attorney then described the sort of medical evidence the attorney
should submit, if not already a part of the record.  Id.


        In cases such as this where claimant is represented by
counsel:

        ordinarily an ALJ may rely on counsel to present the
        claimant's case and to develop her claims.  The
        Commissioner's decision will not be reversed based on
        an ALJ's failure to adequately develop the record
        absent a showing that the claimant was prejudiced by a
        gap in the evidence.  To establish prejudice, the
        claimant must show that the missing evidence might have
        led to a decision in her favor.

Bica v. Astrue, No. 11-cv-86, 2011 U.S. Dist. LEXIS 133057, at
*21-*22 (D.N.H. Nov. 17, 2011) (internal citations omitted).


        Here, especially where the ALJ provided claimant with a
consultative examination, there is no missing evidence.  Dr. Read
provided a consultative examination and opinion regarding
claimant's alleged disabling conditions.  Admin Rec. at 236-39.
The medical evidence in the record is substantial, including Dr.
Read's examination and report, Dr. Patil's treating notes that

describe claimant's psychological presentation dating back to
less than two months after the alleged onset of his disability,
and Dr. Dupuis' treating notes that do not suggest severe
disabling mental conditions.  Id. at 49-57; 206-39.  Further,
claimant has failed to establish any prejudice resulting from the
fact that the consultative examination was performed by Dr. Read
rather than Dr. Patil.  To the contrary, claimant urges this
court to rely on Dr. Read's findings.  Thus, the record is
adequately developed in this case and supports the ALJ's
findings.  See Ribeiro v. Barnhart, 149 F. App'x 7, 8 (1st Cir.
2005) (stating that the ALJ only has "a duty to 'develop an
adequate record from which a reasonable conclusion can be
drawn.'")


V.   Testimony By Claimant's Wife

     Claimant argues that he was denied a full and fair hearing
because the ALJ expressed a bias against the testimony of his
spouse and disregarded it in making his disability determination
without explanation.


     "Due process requires an impartial decision-maker in
administrative as well as judicial proceedings."  Smith v.
Charter, No. 95-cv-121, 1996 WL 302674, at *5 (D.N.H. Mar. 12,
1996).  However, there "is a presumption of honesty and integrity

in those serving as adjudicators . . . which plaintiff must overcome to prevail on a claim of bias." Id. (internal citations and quotation marks omitted).

Here, claimant has not overcome the presumption of fairness. While the ALJ stated that he ordinarily does not "take spousal testimony" because he can "pretty much guess what she's going to testify about," he permitted claimant's wife to testify, and he considered her testimony in rendering his RFC determination. Id. at 16; 40-42. After thoroughly considering the evidence of record, the ALJ concluded that claimant's testimony, as well as that of his wife, overstated claimant's impairments to some degree. That was an entirely permissible conclusion for the ALJ to draw, it is supported by substantial evidence, and he was not required to address the wife's testimony in any greater detail. The Court of Appeals for the Seventh Circuit has addressed this very point:

> [Claimant's] brother['s] testimony did not constitute a separate "line of evidence." Rather, it served strictly to reiterate, and thereby corroborate, [claimant's] own testimony concerning his activities and limitations. To the extent [the] ALJ found [claimant's] testimony concerning his disabling pain and physical limitations to be untenable when contrasted with his reported daily activities and the relevant medical evidence, he necessarily found [his brother's] supporting testimony similarly not credible. [The] ALJ, therefore, did not err by declining to address [claimant's brother's] testimony specifically.

19

Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); see also
Lindahl v. Barnhart, No. 02-cv-400, 2003 WL 21994761, at *6
(D.N.H. Aug. 21, 2003).

Thus, while there is evidence in the record to support
claimant's assertions of disabling impairments, there is
also substantial countervailing evidence supporting the
ALJ's conclusion that claimant is not totally precluded from
all gainful activity.  Consequently, there is no basis for
the court to vacate the ALJ's conclusion.

## Conclusion

This court's review of the ALJ's decision is both
limited and deferential.  The court is not empowered to
consider claimant's application de novo, nor may it
undertake an independent assessment of whether he is
disabled under the Act.  Rather, the court's inquiry is
"limited to determining whether the ALJ deployed the proper
legal standards and found facts upon the proper quantum of
evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.
1999).  Provided the ALJ's findings are properly supported
by substantial evidence – as they are in this case – the
court must sustain those findings even when there may also
be substantial evidence supporting the contrary position.

Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of his decision (October 19, 2012).

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Acting Commissioner's motion to

affirm her decision (document no. 9) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

      **SO ORDERED.**

                                  Steven J. McAuliffe
                                  United States District Judge

February 6, 2015

cc:  Vincent A. Wenners, Jr., Esq.
     Robert J. Rabuck, Esq.

22